UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-00030-LEW |
| | ) | |
| ALEXANDER BRIDGES, | ) | |
| | ) | |
| Defendant | ) | |

## **ORDER**

Defendant Alexander Bridges has been indicted on one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(b)(2).  This matter is before the Court on Defendant's Motion for Discovery (ECF No. 70).  The Motion is DENIED.

## **BACKGROUND**

The following facts are drawn from the parties' filings.  On August 25, 2025, Homeland Security Investigations ("HSI") Special Agent James Bell obtained a warrant to search Defendant's residence in York, Maine, which he and other investigators executed the next day.  They seized from Defendant's residence several electronic devices, allegedly containing numerous images of child sexual abuse material (CSAM).

In the affidavit to furnish probable cause for that warrant, Agent Bell explained that a user of the internet at Defendant's residence "has been linked to an online community of individuals who regularly send and receive [CSAM] via a hidden website that operated on the Tor anonymity network."  Ex. 1 ¶ 5 (ECF No. 87).  The website in question, he explained, was an online bulletin board for advertising and distributing CSAM that

operated from approximately September 2016 until June 2019, when the server hosting the website was seized by a foreign law enforcement agency.  Ex. 1 ¶ 14.

Agent Bell then explained that, in August 2019, a foreign law agency (FLA) informed the FBI that a particular IP address was used on May 30, 2019, to access CSAM through a website commonly used for the distribution of such material.  Ex. 1 ¶ 25.  He explained that the FLA was the national law enforcement agency of a country with an established rule of law, that there was a long history of criminal investigative information being shared between the FLA and U.S. law enforcement, and that information provided by the FLA in the past had been accurate and reliable.  Ex. 1 ¶ 25-26.  Finally, Agent Bell explained that the FLA had advised U.S. law enforcement that it had obtained the information "through an independent investigation that was lawfully authorized in the FLA's country pursuant to its national laws," that it "had not interfered with, accessed, searched or seized any data from any computer in the United States in order to obtain that IP information," and that U.S. law enforcement did not participate in the FLA's investigation.  Ex. 1 ¶ 26.  Based on the information provided by the FLA, the FBI subpoenaed Charter Communications for subscriber information on the IP address, which led the FBI to Defendant's residence. *See* Ex. 1 ¶ 33.

The Government has produced to Defendant two documents related to the FLA's investigation, which identify the FLA by name.  The first is an "Intelligence Report," which states that on May 30, 2019, the IP address in question "was used to access online child sexual abuse and exploitation material, with an explicit focus on the facilitation of sharing child abuse material (images, links and videos), emphasis on BDSM, hurtcore, core and

death-related material including that of children" and that "[u]sers were required to create an account (username and password) in order to access the majority of the material." Gov't Resp. at 4. The second is a December 17, 2025, letter from an FLA official to the HSI case agent, which, according to the Government, "provides additional information about the FLA's investigation, noting that the data in question was lawfully obtained under its country's laws," and affirms that the FLA did not "interfere[] with" any computer or device in the United States or "access, search or seize any data from any computer in the United States." Gov't Resp. at 4.

Defendant now seeks disclosure of the following:

(1) The mechanism used to obtain the evidence from overseas, including whether the material was obtained through a Mutual Legal Assistance Treaty (MLAT) request, law-enforcement-to-law-enforcement request, voluntary production, or another process;

(2) The United States agency or office that requested or obtained the material;

(3) The foreign agency, authority or entity that produced the material;

(4) Whether the evidence was obtained through any formal Department of Justice Office of International Affairs or diplomatic process;

(5) The identity of the person or agency that first received the evidence on behalf of the United States;

(6) The manner in which the evidence was transmitted to the prosecution team;

(7) Any documentation memorializing the request for a transmission of the evidence, including correspondence, certifications, requests, or responses associated with the production of the materials;

(8) All reports and communications by the FLA regarding the foreign website, Mr. Bridges' account or access to the foreign website and any information concerning the discovery of his IP address;

(9) All communications with National Center for Missing and Exploited Children (NCMEC) including Requests and Reports;

(10) A copy of the complete law enforcement investigative file(s), including the FLA investigative reports;

(11) All Child Victim Identification Program Records; and

(12) All arrest reports, investigator notes, memos from investigating officers, sworn statements and prosecution reports which have not already been provided.

**DISCUSSION**

Broadly speaking, Defendant seeks two categories of evidence: (1) documents and information pertaining to the FLA investigation, and (2) documents and information pertaining to NCMEC. I start with the FLA evidence, noting that the Government represents that the documents it has already produced include some of the information Defendant seeks (namely, the identity of the FLA and which U.S. agencies received the tip). *See* Gov't Resp. at 9.

### A.  Discovery Pertaining to the FLA

Under Rule 16, upon a defendant's request, the Government must produce for inspection evidence that is "material to preparing the defense" and "within the government's possession, custody or control."  Fed. R. Crim. P. 16(a)(1)(E).  As the party moving to compel such production, Defendant carries the burden of demonstrating materiality.  *United States v. Goris*, 876 F.3d 40, 44 (1st Cir. 2017).  "[A] showing of materiality requires 'some indication' that pretrial disclosure of the information sought '[would enable] the defendant significantly to alter the quantum of proof in his favor.'"  *Id*. at 45 (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)).  "[S]ome abstract logical relationship to the issues in the case" is not enough.  *Id*. at 44-45.[1]

Defendant argues that the requested information about the FLA investigation is material to (1) a potential challenge to the authentication of evidence that may be introduced at trial, and (2) arguments Defendant intends to raise in a motion to suppress. With respect to the first, the Government represents that it does not intend to introduce any evidence related to the FLA tip (or that agency's investigation) at trial—the charge Defendant faces in this case pertains to CSAM on devices seized pursuant to the August

---

[1] In his Motion, Defendant also refers to *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 26.2.  Under *Brady* and its progeny, the Government must "disclose evidence in its possession that is favorable to accused and material to guilt or punishment," *United States v. Simon*, 12 F.4th 1, 51 (1st Cir. 2021), that is, evidence that "is either exculpatory or impeaching in nature," *United States v. Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2021).  Rule 26.2 requires the Government to make the statements of its witnesses available to the defendant after the witness has testified.  *See* Fed. R. Crim. P. 26.2(a).  Because Defendant does not develop the argument that *Brady* or Rule 26.2 require production of the evidence he wishes to obtain, I deem it waived.  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

2025 warrant, not any alleged involvement with the website that was the subject of the FLA investigation and tip. *See* Gov't Resp. at 6. If the Government does not intend to introduce this evidence at trial, issues pertaining to its authentication are not material to preparing the defense.

With respect to the second, Defendant argues that the FLA evidence is material to a potential *Franks* challenge and to the question of whether the FLA was engaged in a "joint venture" with U.S. authorities, such that the Fourth Amendment applied to that investigation.[2]

I operate under the assumption that the evidence Defendant anticipates moving to suppress was seized under the authority of the August 2025 search warrant. Ordinarily, the assessment of "whether a search warrant affidavit establishes probable cause" is limited to "the 'facts and supported opinions set out within the four corners of the affidavit.'" *United States v. Cortez*, 108 F.4th 1, 8 (1st Cir. 2024) (internal citation omitted). *Franks v. Delaware*, 438 U.S. 154 (1978), carves out an exception under which a defendant "may obtain an evidentiary hearing 'to challenge the truthfulness of statements made by law enforcement agents in a search warrant affidavit.'" *Cortez*, 108 F.4th at 11 (internal citation omitted). A defendant is entitled to a *Franks* hearing only upon a substantial preliminary showing that the search warrant affiant made a false statement or omission in the affidavit, knowingly and intentionally or with reckless disregard for the truth, and that the false statement or omission was key to the finding of probable cause. *Id.*.

---

[2] Defendant raised these arguments for the first time in his reply brief (ECF No. 80). The Government responded to them in a sur-reply (ECF No. 86).

Defendant argues that the discovery he seeks is material to this preliminary showing. Specifically, Defendant points to Paragraph 26 of the affidavit, which represents that the FLA "advised U.S. law enforcement that the FLA had not interfered with, accessed, searched or seized any data from any computer in the United States in order to obtain that IP address information" and that "U.S. law enforcement personnel did not participate in the investigative work through which the FLA identified the IP address information provided by the FLA." Ex. 1 ¶ 26. Defendant argues that discovery is warranted because these assertions are "unverifiable from the face of the affidavit alone." Def. Reply at 2. As I see it, this argument only implicates one category of evidence Defendant's motion requests—"All reports and communications by the FLA regarding the foreign website, Mr. Bridges['] account or access to the foreign website and any information concerning the discovery of his IP address"—and even then, only to the extent that those "reports and communications" undermine the representations in the affidavit.[3] Def. Mot. at 4.

The Fourth Circuit recently recognized in the context of a very similar discovery dispute that "evidence altering the quantum of proof in a defendant's favor concerning either a *Franks* motion or a suppression motion would satisfy the materiality standard of Rule 16(a)(1)(E)." *United States v. Sanders*, 107 F.4th 234, 253 (4th Cir. 2024). If the Government does have in its possession, custody, or control information or evidence that

---

[3] It is not apparent from Defendant's briefing how information about the "mechanism used to obtain the evidence from overseas," "[w]hether the evidence was obtained through any formal [DOJ] Office of International Affairs or diplomatic process," the "manner in which the evidence was transmitted to the prosecution team," or "documentation memorializing the request for and transmission of the evidence," Def. Mot. at 4, would support a showing that the representations about the FLA's investigation in the affidavit were false or incomplete. And the Government represents that it has already disclosed materials that identify the FLA and U.S. agencies involved.

would tend to show that Agent Bell's affidavit included materially false or incomplete representations about the FLA's investigation, I believe Rule 16(a)(1)(E) would require production. That said, "*Franks* does not itself suggest that the Government has a discovery or disclosure duty." *United States v. Stroup*, 347 F.R.D. 239, 248 (D. Mass. 2024) (internal citation omitted) (rejecting a defendant's request for discovery of additional "documents relative to law enforcement's investigation," notwithstanding the defendant's "assertion that it is impossible to assess the truthfulness of the statements in the supporting affidavits related to the scope and nature of the investigation"); *see also Goris*, 876 F.3d at 46 n.1 ("[U]nder Rule 16, a defendant has no absolute right, on demand, to require the court to help him independently confirm the integrity of materials produced in discovery"). And because "[t]he requirement for a preliminary showing under *Franks* was designed to prevent wide-ranging discovery requests," courts have generally recognized that "discovery requests seeking to support a *Franks* challenge should be denied where a defendant has failed to make the preliminary showing necessary for a *Franks* hearing." *United States v. Messalas*, 612 F. Supp. 3d 93, 111 (E.D.N.Y. 2020) (collecting cases); *see also United States v. Kiejzo*, No. 4:20-cr-40036, 2022 WL 1078214, at *4 (D. Mass. Apr. 11, 2022) ("Several courts have concluded that a defendant seeking discovery to mount a *Franks* challenge must make a similar 'substantial preliminary showing.'") (collecting cases). Defendant has not made such a showing, or anything resembling it, in the briefing

8

before me.[4]  This does not foreclose the possibility, however, that if Defendant does make the required showing in a future *Franks* motion, additional discovery may be called for.

Next, Defendant argues that the requested information and documents are material to his evaluation of whether the FLA and U.S. law enforcement engaged in a joint venture, as may be relevant to a motion to suppress.  Generally, "the 'exclusionary rule' does not require the suppression of evidence seized by foreign police agents," unless the "foreign police conduct 'shock[s] the judicial conscience'" or the operation was a "joint venture"—that is, "American agents 'participated in the foreign search'" or the foreign law enforcement executing the search acted "as agents for their American counterparts." *United States v. Hensel*, 699 F.2d 18, 25 (1st Cir. 1983) (internal citation omitted); *see also United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012).  To determine whether U.S. law enforcement's involvement in a foreign authority's activity "was so substantial" as to convert a search into a joint venture, courts consider a variety of factors pertaining to the degree to which U.S. law enforcement was involved in the foreign investigation and the nature of that involvement.  *United States v. Acevedo*, No. 14-cr-754, 2020 WL 2537644, at *5 (D.P.R. May 18, 2020).  These include whether U.S. law enforcement initiated the investigation, whether U.S. law enforcement was involved in the decision to conduct the search in question, and whether U.S. law enforcement personnel "controlled, directed, or

---

[4] For starters, it is not obvious to me, and Defendant has not shown, that the representations in the affidavit that he seeks discovery to "test"—that is, that the FLA did not access any computer in the United States and that U.S. law enforcement did not participate in that investigation—are "necessary to the finding of probable cause." *United States v. Centeno-Gonzalez*, 989 F.3d 36, 50 (1st Cir. 2021).  Moreover, as the Government observes, the FLA-related documents that the Government *has* disclosed corroborate these representations.

supervised" that search.  *United States v. Kiejzo*, No. 4:20-cr-40036, 2023 WL 2601577, at *7 (D. Mass. Mar. 21, 2023) (quoting *United States v. Marte*, No. 16-cr-30044, 2018 WL 4571657, at *6 (D. Mass. Sept. 24, 2018)); *see also Valdivia*, 680 F.3d at 52.

Defendant points to Agent Bell's references to prior FLA tips and a history of information-sharing between the FLA and U.S. law enforcement as evidence of "a repeat-player investigative pipeline in which the FLA identifies U.S.-based IP addresses and the FBI executes warrants against U.S. persons."  Def. Reply at 3.  A history of "general cooperation between the FBI and foreign governments in similar investigations" does not amount to a joint venture.  *United States v. Dugan*, 136 F.4th 162, 170 (4th Cir. 2025).  There is simply no evidence to suggest that the relationship between the FLA and U.S. law enforcement in this case involved anything more, beyond Defendant's "pure hopeful speculation."[5]  *Id*. at 171.  That is not enough to compel production under Rule 16.  *See Kiejzo,* 2022 WL 1078214, at *3-4 (rejecting a joint venture theory as "speculative" where "the only indication of a joint venture is that the United States and the Notifying FLA have, in the past, worked together and shared information"); *Goris*, 876 F.3d at 45 (a defendant's discovery request that is "grounded in a speculative theory" does not make the required showing of materiality); *see also United States v. Mitro*, 880 F.2d 1480, 1483 (1st Cir. 1989) (rejecting a defendant's request for an evidentiary hearing on the foreign law

---

[5] Even if Defendant's speculative characterization of the FLA-FBI "pipeline" relationship proved correct, I am somewhat skeptical even that would amount to a joint venture under the case law Defendant musters. *See*, *e.g.*, *United States v. Abu Ali*, 528 F.3d 210, 229 (4th Cir. 2008) (no joint venture without evidence of active or substantial American participation, such as "coordination and direction of an investigation" by U.S. law enforcement).

enforcement agency's conduct where there was only "pure speculation" that additional evidence "might have revealed conduct capable of shocking the judicial conscience").

Finally, a word on what it means for evidence to be "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). I agree with the Government that it has no obligation under Rule 16 to seek from the FLA evidence that it does not already have. Courts have "declined to extend prosecutors' Rule 16 disclosure obligations to information outside of the possession of the federal government," holding that "the duty of production imposed by Rule 16(a)(1)(E) extends to all qualifying documents within the 'possession, custody, or control' of any component of the U.S. federal government—but not beyond." *United States v. Mitrovich*, 95 F.4th 1064, 1070 (7th Cir. 2024); *see also United States v. Hughes*, 211 F.3d 676, 688-89 (1st Cir. 2000). I see no basis under Rule 16 for requiring the Government to affirmatively seek from the FLA documents and information that it does not already have. While Defendant is correct that courts have "recognized a constructive-possession doctrine in the *Brady* context," *Mitrovich*, 95 F.4th at 1071, that imposes upon "the individual prosecutor . . . a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), I am not persuaded that the doctrine applies to Rule 16 material in the exclusive possession of a foreign government, *see Mitrovich*, 95 F.4th at 1071, or that the discovery Defendant has requested here qualifies as *Brady* material, *see Dugan*, 136 F.4th at 170.[6]

---

[6] Again, Defendant has not articulated any reason to believe material related to the FLA investigation would be exculpatory or impeaching.

**B. Discovery Pertaining to NCMEC**

The Government represents that this case does not involve a NCMEC CyberTip, and that as a result, there is nothing within the scope of this request to produce—except for the Child Identification Report identifying the victims whose images Defendant allegedly possessed, which the Government indicates it intends to produce. *See* Gov't Resp. at 5 n.1, 10. Defendant maintains that this does not dispose of his requests for NCMEC materials, arguing that he is entitled to a "certification" from the Government under Rule 16. Def. Reply at 8-9. I am not aware of any such certification requirement, but I take seriously the Government's representation in its filings that there is no additional NCMEC material to produce and that it will make further disclosures as required by Rule 16(c) should additional discoverable material come into its possession, custody, or control. I see no need to take any further action.

Defendant also argues that NCMEC is a governmental entity for Fourth Amendment purposes, citing *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), and requests "[a]ny communication between NCMEC and the FLA, NCMEC and any ICAC[7] affiliate, or NCMEC and U.S. law enforcement regarding the IP addresses at issue," Def. Reply at 9, a request that the Government objects to as "wildly overbroad," Gov't Sur-Reply at 4. Defendant offers no reason to believe any of this would be material for purposes of Rule 16 or otherwise subject to *Brady*'s disclosure requirement, so I will not consider this request further.

---

[7] Internet Crimes Against Children Task Force Program.

## CONCLUSION

Defendant's Motion for Discovery (ECF No. 70) is DENIED.

**SO ORDERED.**

Dated this 5th  day of May, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge